UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL DUBE, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF</u>**

Plaintiff, the United States of America, by and through its undersigned attorney, hereby alleges as follows:

**INTRODUCTION**

1. This is an action brought by the United States for a temporary restraining order, preliminary and permanent injunctions, and other equitable relief to which it is entitled under the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, to enjoin the alienation or disposition of property derived from violations of 18 U.S.C. § 1347 and property of equivalent value.

2. From May 22, 2014, to January 2020, American Toxicology Labs, LLC (ATL) and Michael Dube engaged in a healthcare fraud scheme to fraudulently obtain Medicare and Medicaid funds.

3. For the reasons stated herein, the United States seeks, pursuant to the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, to enjoin Dube, and others acting on his behalf, from alienating or disposing of property and assets linked to Dube's healthcare fraud in violation of 18 U.S.C. § 1347 and property of equivalent value.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the subject matter of this action pursuant to 18 U.SC. § 1345 and 28 U.S.C. §§ 1331, 1345.

5. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

6. Plaintiff is the United States of America acting pursuant to its authority under 18 U.S.C. § 1345 to seek injunctive and other relief warranted to prevent continuing and substantial injury to any person, as well as its duty and authority under 28 U.SC. § 3664(m) to enforce orders of restitution by all other and available means.

7. The defendant is Michael Dube, whose last known residence is 113 Sterling Springs Drive, Johnson City, Tennessee.

## FACTS

### I. Michael Dube's Loss of His Medical License

8. Michael Dube was licensed to practice medicine in Tennessee beginning in 1996.

9. On May 17, 2007, the Tennessee Board of Medical Examiners ("Board") placed Michael Dube, on probation for no less than five years, pursuant to an Agreed Order, for "unprofessional, dishonorable, or unethical conduct; gross malpractice, or a pattern of continued or repeated malpractice, ignorance, negligence, or incompetence in the course of medical practice; dispensing prescribing, or otherwise distributing any controlled substance or any other drug not in the course of professional practice, or not in good faith to relieve pain and sufferance, or not to cure an ailment, physical infirmity or disease, or in amounts and/or for durations not medically

necessary, advisable or justified for a diagnosed condition; and failure to follow Rule 0880-2.14(7)(A) of the Board."

10. The Agreed Order required Dube's compliance with several conditions. One of those conditions was maintaining the support and advocacy of the Tennessee Medical Foundation (TMF).

11. On September 19, 2009, the Board suspended Dube's medical license indefinitely because Dube lost the advocacy of the TMF "due to relapse and has entered an extended inpatient treatment program at Bradford Health Services in Alabama."

12. Dube petitioned the Board to lift the suspension on his medical license. On January 26, 2011, the Board lifted the suspension of Dube's medical license, but placed him on probation for a period of not less than ten years. The Board further ordered Dube to maintain the advocacy of TMF for life. Additionally, Dube could not maintain more than one office location and could not have an ownership interest in any medical practice other than his single office location.

**II.    Guilty Plea in Eastern District of Tennessee**

13. On September 15, 2010, a federal grand jury in the Eastern District of Tennessee indicted Dube on sixteen counts of acquiring and obtaining possession of controlled substances by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of 21 U.S.C. § 843(a)(3), and one count of knowingly and intentionally omitting material information from reports, records, and documents required to be kept under the Controlled Substances Act, in violation of 21 U.S.C. § 843(a)(4)(A).

14. On January 11, 2011, a federal grand jury sitting in the Eastern District of Tennessee returned a true bill for a superseding indictment. The Superseding Indictment added fifteen counts of knowingly and intentionally omitting material information from reports, records,

and documents required to be kept under the Controlled Substances Act, in violation of 21 U.S.C. § 843(a)(4)(A), and one count of knowingly and willfully making a false, fraudulent, and fictitious material statement and representation to the Drug Enforcement Administration, in violation of 18 U.S.C. § 1001.

15. On March 10, 2011, Dube pled guilty, pursuant to a plea agreement, to one count of knowingly and intentionally omitting material information from reports, records, and documents required to be kept under the Controlled Substances Act, in violation of 21 U.S.C. § 843(a)(4)(A), and one count of knowingly and willfully making a false, fraudulent, and fictitious material statement and representation to the Drug Enforcement Administration, in violation of 18 U.S.C. § 1001.

16. The facts in the plea agreement set forth Dube "used his DEA registration to obtain hydrocodone, oxycodone, and buprenorphine (Suboxone) from drug suppliers which he then self-administered," and he "kept no records of the disposition of the drugs as required by the Controlled Substances Act and DEA regulations."

17. The facts in the plea agreement additionally set forth Dube falsely certified in his May 6, 2008 DEA registration renewal form that he had not had his medical license suspended, despite the May 17, 2007 Agreed Order with the Board suspending his license for five years.

18. On July 26, 2012, based on Dube's guilty plea, the Board revoked Dube's medical license for "not less than one year."

19. Since his 2012 license revocation, Dube has not been licensed to practice medicine.

**III.  Dube's Exclusion from All Federal Healthcare Programs**

20. By letter dated April 10, 2012, the Department of Health and Human Services, Office of the Inspector General (HHS-OIG) notified Dube that federal law required his exclusion

4

from participating in any capacity in Medicare, Medicaid, and any other federal healthcare programs as defined by § 1128B(f) of the Social Security Act. The letter further explained the exclusion was due to his conviction in the Eastern District of Tennessee.

21. The April 10, 2012 letter stated Dube's exclusion would have a significant effect on his ability to work in the healthcare field and the federal healthcare program would not pay for any items or services furnished, ordered, or prescribed in any capacity by Dube. The letter elaborated that no one could seek federal healthcare program payment for any items or services Dube provided, including administrative, clerical, or other activities that do not directly involve patient care or the provision of any healthcare related services.

22. HHS-OIG did not get the April 10, 2012 letter returned as undeliverable and did not otherwise receive any communication from Dube in response to the letter.

23. HHS-OIG sent Dube another letter, dated June 29, 2012, informing Dube he was now excluded from federal healthcare programs as set forth in its April 10, 2012 letter for a minimum statutory period of five years.

24. HHS-OIG's June 29, 2012 letter stated it was required to notify all applicable state agencies of Dube's exclusion and the state agencies were similarly required to exclude Dube from participation in any state healthcare programs.

25. The June 29, 2012 letter also set forth the following: "**YOUR REINSTATEMENT IS NOT AUTOMATIC**. You will not be reinstated at the conclusion of the minimum period of exclusion, or anytime thereafter, UNLESS YOU **APPLY TO THE OIG** AND **ARE GRANTED REINSTATEMENT** to the Medicare and Federal healthcare programs under the provisions of 42 U.S.C. 1320a-7(g) and 42 C.F.R. 1001.3001-3005."

26. HHS-OIG did not get the June 29, 2012 letter returned as undeliverable and did not otherwise receive any communication from Dube in response to the letter.

27. On June 29, 2012, HHS-OIG notified the Bureau of TENNCARE for the state of Tennessee that Dube was excluded from participation in the Medicare, Medicaid, and all federal healthcare programs effective twenty days from the date of the letter.

28. On June 29, 2012, HHS-OIG also notified the Tennessee Department of Health, Bureau of Health Licensure and Regulation that Dube was excluded from participation in Medicare, Medicaid, and all federal healthcare programs effective twenty days from the date of the letter.

29. By virtue of the exclusion, Dube could not be employed by a hospital, nursing home, or other provider or supplier that participates in federal healthcare programs.

**IV.   American Toxicology Labs LLC**

30. ATL is a Limited Liability Company that has been registered with the Tennessee Secretary of State since May 2013.

31. ATL's principal office and mailing address registered with the Tennessee Secretary of State is 113 Sterling Springs Drive, Johnson City, Tennessee.

32. ATL's Registered Agent is Regan Dube.

33. Regan Dube is the wife of Michael Dube.

34. Regan and Michael Dube maintain a primary residence at 113 Sterling Springs Drive, Johnson City, Tennessee.

35. On July 29, 2013, a year after Michael Dube's exclusion from federal healthcare programs, Michael and Regan Dube opened a checking account at State of Franklin Bank on behalf

of ATL. In doing so, both Michael and Regan Dube signed the account documents each as an "Agent of American Toxicology Labs LLC."

36. Serval ATL employees identified Michael Dube as the owner of ATL.

37. ATL employees only saw Regan Dube at ATL's office a couple times a year.

38. During the credentialing of ATL with Medicare and Virginia Medicaid, Michael Dube sought credentialing assistance from Physician Professional Services. Regan Dube never worked with Physician Professional Services to complete any of the necessary credentialing paperwork.

39. Michael Dube was the owner and operator of ATL.

**V.     False Information Submitted in Relation to Medicare and Medicaid Applications**

40. On May 22, 2014, Regan Dube, on behalf of ATL, submitted a Medicare enrollment application package to the Centers for Medicare and Medicaid Services.

41. Section 3 of the Medicare application, concerning "Final Adverse Legal Actions/Convictions, Exclusions, Revocations or Suspensions," on pages 12–13, seeks to uncover any adverse history regarding the organization, including "[a]ny suspension or exclusion from participation in, or any sanction imposed by a Federal or State healthcare program, or any debarment from participation in any Federal Executive Branch procurement or non-procurement program." On the application, Regan Dube denied any such history.

42. Owners, Authorized Officials, and/or Delegated Officials must complete Section 6 of the Medicare application. Section 6A requires disclosure of such individuals. This includes "Managing Employees," which are defined in the application as a general manager, business manager, administrator, director, or other individual, who exercises operational or managerial

7

control over, or who directly or indirectly conducts the day-to-day operations of the supplier, either under contract or through some other arrangement.

43. Regan Dube did not report Michael Dube in Section 6 of the application.

44. Section 6 of the application asks, "Has this individual in Section 6A above, under any current or former name or business identity, ever had a final adverse legal action listed on page 13 (Section 3: Final Adverse Actions/Convictions) of this application imposed against him/her?" Regan Dube responded, "No" to this question.

45. On July 7, 2014, Cahaba Government Benefit Administrators, LLC, on behalf of the Centers for Medicare and Medicaid Services (Cahaba GBA), sent ATL a letter informing it the Medicare enrollment application was received on June 30, 2014, and was under review.

46. On September 20, 2014, Michael Dube and Regan Dube opened a second ATL bank account. They opened this checking account at BB&T, and both Michael and Regan Dube signed the account documents as agents of ATL.

47. On October 20, 2014, Cahaba GBA informed ATL via letter that ATL had to furnish complete, supplemental information within thirty calendar days or the application would be rejected.

48. Eight days later, on October 28, 2014, Regan Dube provided supplemental information to Cahaba GBA, but still did not disclose Michael Dube's involvement in ATL or his exclusion from federal healthcare programs.

49. In 2014, ATL also submitted an enrollment application to Virginia Medicaid.

50. The Virginia Medicaid application included the following question no. 25: "Has any individual or contractor connected with your practice ever been convicted or assessed fines or penalties for any health related crimes or misconduct, or is excluded from any Federal or State

healthcare program due to fraud, obstruction of an investigation, a controlled substance violation or any other crime or misconduct?" Regan Dube answered, "No." to that question.

51. Regan Dube also included a flood insurance policy declaration form with ATL's Virginia Medicaid application. The flood insurance policy declaration form stated the following under the general property section: "Dr. Michael Dube, 414 E. Watauga Ave., Johnson City, TN 37501."

52. 414 E. Watauga Ave., Johnson City, TN 37501 is the physical address for ATL.

53. On November 7, 2014, Cahaba GBA informed ATL via letter that ATL's initial Medicare enrollment application had been approved and Medicare checks would automatically be deposited into ATL's State of Franklin Bank checking account.

54. After receiving the November 7, 2014 notification, ATL informed Cahaba GBA that ATL changed its bank account to BB&T.

55. On or about February 5, 2015, Virginia's Department of Medical Assistance Services (DMAS) sent ATL a letter stating its Medicaid application was approved, effective July 23, 2014.

56. On or about July 14, 2016, ATL submitted an updated Medicaid enrollment form to DMAS. This updated application maintained "no" as the answer to question no. 25.

57. On or about October 25, 2016, ATL submitted a second updated Medicaid enrollment form to DMAS. This second updated application maintained "no" as the answer to question no. 25.

58. Appalachian Counseling Centers, LLC (ACC) was another entity created by Michael Dube through another individual.

59. Edward Lardizabal was the Director of Operations for ACC.

9

60. Lardizabal was also the records custodian for ATL.

61. On or about March 11, 2019, ACC executed a contract with the Tennessee Department of Mental Health and Substance Abuse Services (DMHSAS) for a $250,000 grant for the provision of State Opioid Response—Spoke program. Through this program, ACC was to provide services to determine if medication assisted treatment is appropriate to restore, enhance, or maintain the recipient's appropriate level of life functioning and to provide services that facilitate and support long-term recovery.

62. The Tennessee DMHSAS contract stated the following: "The Grantee certifies, to the best of its knowledge and belief, that it, its current and future principals, its current and future subcontractors and their principals are not presently disbarred, suspended, proposed for disbarment, declared ineligible, or voluntarily excluded from covered transactions by any federal or state department or agency."

63. Lardizabal signed the Tennessee DMHSAS contract on behalf of ACC.

64. On July 10, 2019, Dube opened a checking account for ACC at Bank of Tennessee and signed the account document as the authorized signor for ACC.

65. Michael Dube was an agent of ACC at all relevant times.

**VI.    ATL's Fraudulently Obtained Medicare and Medicaid Funds**

66. Dr. Ralph T. Reach operated multiple suboxone clinics (known as Watauga Recovery Centers (WRC)) in southwest Virginia and east Tennessee from 2011 to August 2018.

67. WRC engaged in controlled substance and healthcare fraud violations.

68. Each WRC clinic maintained an on-site collection suite that sent urine samples to ATL.

69. At each visit, WRC patients were usually required to submit to a urine drug test, which was then sent to ATL for analysis.

70. The WRC patients used federal and/or state healthcare benefits or private insurance to pay for these required urine drug tests.

71. From January 2014 to January 10, 2020, Medicare records show Medicare paid approximately $1.9 million for ATL's urine drug tests ordered by WRC.

72. From January 2014 to April 2018, Virginia Medicaid records show Virginia Medicaid paid approximately $5,900 for ATL's urine drug tests ordered by WRC.

73. From January 2014 to April 2018, TennCare records show TennCare paid approximately $680,000 for ATL's urine drug tests ordered by WRC.

74. From January 2014 to January 2020, Medicare made payments to ATL totaling approximately $6,181,000.00.

75. Because Michael Dube is excluded from federal and state healthcare benefit programs, and has been since 2012, all amounts paid by Medicare and Medicaid are fraudulent.

### VII. Dube's Dissipation of Assets and Fraudulently Obtained Funds

76. ATL's bank records show from January 2, 2015, to December 31, 2019, over $13.5 million in proceeds from Medicare, Medicaid, and private insurance companies was deposited into its checking accounts at BB&T and Bank of Tennessee.

77. During this time, bank records show Michael Dube made numerous withdrawals of this fraudulently obtained money to both himself and service providers for ATL.

78. A review of ATL, ACC, and Michael Dube's financial accounts reveals that substantially all of the $6,866,900 in fraudulently obtained Medicare and Medicaid proceeds has been dissipated by Dube.

79. Dube used fraudulently obtained funds to pay off his mortgage.

80. Dube used fraudulently obtained funds to improve other real property he owns.

81. Dube transferred fraudulently obtained funds to numerous investment and retirement accounts in his, his wife's, and his daughter's names.

82. Dube transferred fraudulently obtained funds among several accounts in an attempt to conceal their nature as tainted fraud proceeds.

83. On or about September 27, 2019, the day after law enforcement executed a federal search warrant on ATL, Dube transferred $600,000 from his bank accounts to an attorney.

84. On January 21, 2020, Dube transferred $400,000 from his bank accounts to two attorneys.

## COUNT I
## 18 U.S.C. § 1345—Injunctive Relief

85. The United States realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

86. As a result of the conduct described herein, Dube violated 18 U.S.C. § 1347 by fraudulently obtaining Medicare and Medicaid funds totaling approximately $6,866,900.00.

87. Under 18 U.S.C. § 1345, upon a showing that Defendant has alienated or disposed of property, or intends to alienate or dispose of property, obtained as a result of healthcare fraud, the United States is entitled to an injunction restraining such alienation or disposition, as well as a restraining order prohibiting any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value and appointment of a temporary receiver to administer such restraining order.

88. As a result of the foregoing, the alienation and disposition of Dube's property should be enjoined.

## **PRAYER FOR RELIEF**

The United States of America respectfully requests the following relief:

1. A temporary restraining order pursuant to 18 U.S.C. § 1345 as follows:

    a. Enjoining Defendant, his agents, officers, and employees, and all other persons and entities in active concert or participation with him from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value obtained as result of healthcare fraud, as defined by 18 U.S.C. § 1347; and

    b. Enjoining Defendant, his agents, officers, and employees, and all other persons and entities in active concert or participation with him from destroying, deleting, removing or transferring any and all business, financial, accounting, and other records concerning Defendant's operations and the operations of any other corporate entity owned or controlled, in whole or in part, by Defendant;

2. A preliminary injunction and permanent injunction on the same basis and to the same effect.

3. Such other and further relief as the Court shall deem just and proper.

Date: <u>March 19, 2020</u>             Respectfully submitted,

                                        THOMAS T. CULLEN
                                        United States Attorney

                                         <u>*s/ Krista Consiglio Frith*</u>
                                        Assistant United States Attorney
                                        Virginia State Bar #89088
                                        United States Attorney's Office
                                        P.O. Box 1709
                                        Roanoke, VA 24008
                                        TEL (540) 857-2250
                                        FAX (540) 857-2614
                                        Email: krista.frith@usdoj.gov

## VERIFICATION

I, Darren Petri, hereby declare that:

1. I am a Special Agent with the Food and Drug Administration, Office of Criminal Investigation.

2. I have read the above Verified Complaint and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Verified Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 19, 2020 in Roanoke, Virginia.

Darren Petri

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
Michael Dube

**(b)** County of Residence of First Listed Plaintiff  
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Johnson City, Tennessee  
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*  
Krista Consiglio Frith, United States Attorney's Office  
310 First Street, SW, Room 906, Roanoke, VA 24011  
540-857-2250

Attorneys *(If Known)*  
Stephen Ross Johnson, Ritchie Dillard, Davies & Johnson P.C.  
James R. Stovall, Ritchie, Dillard, Davies & Johnson, P.C.  
John E. Jessee, Jessee, Read, and Howard, P.C.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability / 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  |  | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability / 368 Asbestos Personal Injury Product Liability |  | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine |  | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability / 370 Other Fraud | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury / 371 Truth in Lending | 720 Labor/Management Relations | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | / 380 Other Personal Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 196 Franchise | / 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/Exchange |
|  | 362 Personal Injury - Medical Malpractice |  | 864 SSID Title XVI | |
|  |  | 790 Other Labor Litigation | 865 RSI (405(g)) | [X] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights / **Habeas Corpus:** |  | 870 Taxes (U.S. Plaintiff or Defendant) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting / 463 Alien Detainee |  | 871 IRS—Third Party 26 USC 7609 | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment / 510 Motions to Vacate Sentence |  |  | 896 Arbitration |
| 240 Torts to Land | 443 Housing/Accommodations / 530 General |  |  | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment / 535 Death Penalty | **IMMIGRATION** |  |  |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other / **Other:** / 540 Mandamus & Other | 462 Naturalization Application |  | 950 Constitutionality of State Statutes |
|  | 448 Education / 550 Civil Rights | 465 Other Immigration Actions |  |  |
|  | / 555 Prison Condition |  |  |  |
|  | / 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:  
18 U.S.C. 1345  
Brief description of cause:  
Anti-fraud injunction

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  
CHECK YES only if demanded in complaint:  
JURY DEMAND: [ ] Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*  
JUDGE: Pamela Sargent  
DOCKET NUMBER: 1:20-mc-1

DATE: 03/19/2020  
SIGNATURE OF ATTORNEY OF RECORD: /s/Krista Consiglio Frith

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE